IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-00012-01-CR-W-DW |
| ) | |
| ROSCOE D. TEAGUES III, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Teagues' Motion to Suppress Statements. For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On December 15, 2015, a Criminal Complaint was filed against defendant Roscoe D. Teagues III. On January 12, 2016, the Grand Jury returned a one-count Indictment against defendant Teagues charging defendant with being a felon in possession of a firearm.

On January 5, 2017, an evidentiary hearing was held on defendant's motion to suppress. Defendant Teagues was represented by Assistant Federal Public Defender W. Marc Ermine. The Government was represented by Assistant United States Attorney Justin G. Davids. The Government called Detective Troy Schwalm of the Kansas City, Missouri Police Department as a witness. The defense called no witnesses to testify.

II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On December 14, 2015, Detective Troy Schwalm conducted an interview with defendant Roscoe D. Teagues III. (Tr. at 3) The interview was in regards to defendant Teagues possessing a revolver while being a convicted felon.[1] (Tr. at 3) Teagues had been taken into custody at 7:33 p.m. on December 14, 2015. (Tr. at 7; Government's Ex. 1) Teagues was tased when he was taken into custody.[2] (Tr. at 16) Detective Schwalm checked Teagues out of detention at 10:35 p.m. (Tr. at 7; Government's Ex. 1)

2. Detective Schwalm presented defendant Teagues with a written Miranda rights waiver form on December 14, 2015, at 10:40 p.m. (Tr. at 3-4, 7) The Miranda Warning and Waiver form provided:

    1. You have the right to remain silent.

    2. Anything you say can and will be used against you in a court of law.

    3. You have the right to talk to a lawyer and have him/her present with you while you are being questioned.

    4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish.

    5. You can decide at any time to exercise these rights and not answer any questions or make any statements.

I understand all of these rights and I am willing to talk to you.

(Government's Ex. 1) Detective Schwalm read the waiver form to Teagues. (Tr. at 5-6) Detective Schwalm asked Teagues if he understood his rights and Teagues told Detective Schwalm that he did. (Tr. at 6) Detective Schwalm asked Teagues for his signature indicating that he understood his rights. (Tr. at 6) Defendant Teagues signed the waiver form. (Tr. at 5-6; Government's Ex. 1)

3. During the interview, defendant Teagues indicated that he had completed

---

[1] Before the interview, Detective Schwalm ran a criminal history check on defendant Teagues and discovered that Teagues had been arrested for numerous felonies in various states. (Tr. at 14-15, 32)

[2] Officers were called when defendant Teagues was found with his pants down, masturbating, in the back of a Metro Bus. (Tr. at 16-17) Teagues was tased after he did not respond to the officers' verbal commands. (Tr. at 19) The officers believed that Teagues was under the influence of PCP and he had a gun next to him. (Tr. at 20) After Teagues was tased, EMS was called and Teagues was taken to a hospital. (Tr. at 19-20) Teagues was evaluated and released from the hospital. (Tr. at 28) Teagues told Detective Schwalm that he was given Advil at the hospital. (Tr. at 21) Teagues was booked into the holding facility at the jail. (Tr. at 21)

his general education degree or GED.   (Tr. at 6)

      4.      Detective Schwalm testified that defendant Teagues spoke in a calm and soft manner.  (Tr. at 8)  Detective Schwalm testified that he had no trouble communicating with Teagues.  (Tr. at 8)  Detective Schwalm testified that Teagues was responsive to Schwalm's questions.  (Tr. at 8)

      5.      Detective Schwalm prepared a report of his interview with defendant Teagues.  (Tr. at 16; Government's Ex. 3)  The report states in part:

> … Several of Mr. TEAGUES initial responses to answers [sic] were inconsistent with answers given to follow-up questions.  In my experience as a detective conducting interviews with suspects, witnesses, and co-conspirators in criminal investigations, Mr. TEAGUES responses were indicative of him trying to appear cooperative by willingly answering questions while actively being deceitful by only giving half-truths.  Mr. TEAGUES was not confused about any of his responses during the interview, and did not appear to have any mental instability or signs of being disturbed.
>
> I asked Mr. TEAGUES if the officers had informed him why he had been arrested.  Mr. TEAGUES responded by saying "It's pretty explanatory."
>
> I explained to Mr. TEAGUES the Metro bus driver had called the police because he refused to get off the bus, and provided him with a possible scenario of just not having any other place to go.  Mr. TEAGUES agreed with that interpretation by saying "Basically."
>
> I asked Mr. TEAGUES what he was doing with the firearm on the bus.  Mr. TEAGUES gave a one word response of "Hobby."  Mr. TEAGUES denied he brought the gun with him to rob somebody when I asked and would smile when I asked specific questions about the gun make and how new it was.
>
> I tried to determine how long Mr. TEAGUES had possessed the firearm before he was arrested with it.  Initially, Mr. TEAGUES would give general answers such as "a short while" or "short term."  However, when I asked him to tell me approximately with options of a day, a week, a month, or a year, Mr. TEAGUES said "a month."
>
> I asked Mr. TEAGUES if he had bought the firearm or if he had found the firearm.  He responded that he had purchased the firearm and claimed to have spent $250 for the weapon.  I wanted to know if he had purchased the weapon in Kansas or Missouri and he indicated he had received the gun in Missouri.  When I asked some follow-up questions to where or who the firearm had come from, Mr. TEAGUES changed the origin of the weapon to formerly belonging to his deceased father.  Mr. TEAGUES claimed to no[t] know the firearm was stolen and could not

3

explain why it would have been reported stolen out of Texas.

> I asked Mr. TEAGUES if he had been using any drugs in order to self-medicate himself. Mr. TEAGUES asked me if he could get some ibuprofen, but denied using any type of controlled substances either prescribed or illegal.
>
> I asked Mr. TEAGUES to explain why he was naked and masturbating on the bus. Mr. TEAGUES told me there wasn't anything worth talking about concerning that part of his arrest.
>
> Mr. TEAGUES denied he was on any current supervision for felony convictions out of any state. I briefly talked to Mr. TEAGUES about his felony conviction for Battery in Kansas and asked if he was aware it was illegal for him to possess a firearm. Mr. TEAGUES told me he was aware he was prohibited from possessing firearms.

(Government's Ex. 3) The interview ended at approximately 11:00 p.m. (Government's Ex. 3)

6. Detective Schwalm testified that he has experience interacting with people who are on drugs. (Tr. at 10) Detective Schwalm provided the following regarding his experience:

> Well, prior to my current assignment I was a district officer. So, I answered a lot of calls for service with people that were under the influence of various drugs or alcohol. After leaving the district assignment where I was uniform, I was also an undercover police officer where my core responsibilities were making undercover purchases of narcotics. And I did that for about six years. Moved from there to the Gang Unit where I had -- a lot of gang activity revolves around the illegal sale of narcotics and interviewing those people who either sell or are gang members under the -- using or in possession of narcotics. And in my current position I interview a lot of people who have either drugs on them or are selling drugs or are under the influence of drugs and, therefore, they are prohibited from possessing a firearm and that's how they come to my attention as investigating the illegal possession of firearms.

(Tr. at 10-11) Detective Schwalm testified that he has interviewed people who have been high on marijuana, people who have been high on PCP, people who have been high on methamphetamine, and people who have been under the influence of alcohol and cocaine. (Tr. at 11) With respect to people high on PCP, Detective Schwalm has found that they exhibit a roller coaster of emotions. (Tr. at 12) They can be up one second and down the next, yelling, incoherent to answering questions or they get fixated on one specific thing and keep repeating that same thing over and over again. (Tr. at 12) There are also physical indicators associated with PCP – profuse sweating and the smell of PCP. (Tr. at 12) Detective Schwalm testified that it is pretty easy to tell if someone is under the

4

influence of PCP. (Tr. at 12) Detective Schwalm testified that a person under the influence of alcohol gets fixated on a subject matter and will want to tell you one thing specifically over and over again. (Tr. at 12) Alcohol also has a smell associated with it and the person will have bloodshot eyes and slurred speech. (Tr. at 12) While a person under the influence of alcohol can become aggravated, it is different than a person under the influence of PCP. (Tr. at 12) If the person is under the influence of alcohol, the aggravation is usually in response to something you tell them, while if the person is under the influence of PCP, the aggravation is for no reason at all. (Tr. at 12)

7. Detective Schwalm testified that during his interview with defendant Teagues, Teagues exhibited no indicators of being under the influence of anything. (Tr. at 12-13) Detective Schwalm testified that being tased does not impair a person's ability to understand or answer questions. (Tr. at 31) When Detective Schwalm first made contact with Teagues in detention, Teagues told Schwalm that he was sore. (Tr. at 13) Detective Schwalm assumed that Teagues' soreness was a result of being tased in that a person's muscles clench up when he is tased. (Tr. at 13) Teagues did not indicate that he was in any other pain. (Tr. at 13) Detective Schwalm testified that Teagues did not state that his soreness prevented him from understanding Schwalm or that it was so bad that Teagues did not want to speak to Schwalm. (Tr. at 13) Detective Schwalm testified that it did not appear that pain was affecting Teagues' responses to Schwalm's questions. (Tr. at 13) Detective Schwalm asked Teagues if he had taken any drugs or alcohol. (Tr. at 13) Teagues responded that he had not been drinking and that he was on no drugs. (Tr. at 13)

8. Detective Schwalm testified that people under the influence of PCP are unpredictable. (Tr. at 14) They can be totally calm and then switch and become very violent with the enhanced physicality that comes with PCP. (Tr. at 14) If Detective Schwalm believes that a person he is going to interview might be under the influence of PCP, he would either postpone the interview or if it needed to be done right away, he would have other people in the interview with him. (Tr. at 14) Detective Schwalm conducted the interview of defendant Teagues by himself, in a secluded room away from other people. (Tr. at 14) Detective Schwalm testified that he was not concerned at all in conducting this interview alone. (Tr. at 14)

9. Detective Schwalm testified that he did not make any threats against defendant Teagues to get Teagues to speak with him. (Tr. at 15) Detective Schwalm testified that he did not physically intimidate Teagues nor coerce Teagues in any way. (Tr. at 15)

### III. DISCUSSION

Defendant Teageus seeks to suppress the statements he made to Detective Schwalm on the basis that the evidence was obtained in violation of defendant's rights under the Fifth and Fourteenth Amendments to the United States Constitution. (Motion to Suppress Statements (doc

5

#36) at 1)  According to defendant, Detective Schwalm knew or should have known that defendant was intoxicated and unable to knowingly and voluntarily waive his right to remain silent.  (Id. at 2)  Furthermore, Detective Schwalm knew or should have known that defendant had just been tased and undergone medical treatment as a result.  (Id.)  Defendant argues that "[b]ecause [he] was intoxicated and fresh off medical treatment at the time he purportedly waived his right to remain silent, the admission was not the product of a rational intellect."  (Id. at 3)

"A waiver of the Fifth Amendment privilege against self-incrimination is valid if the waiver is made voluntarily, knowingly and intelligently."  United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008)(citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)).  The Eighth Circuit Court of Appeals has provided the following guidance in assessing a defendant's claim that statements to law enforcement must be suppressed because a Miranda waiver was not voluntary, knowing, and intelligent:

> There are "two distinct dimensions" to the inquiry whether a suspect's waiver of his Miranda rights was voluntary, knowing, and intelligent.  Moran v. Burbine, 475 U.S. 412, 421 … (1986).  First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."  Id.  Second, the suspect must have waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  Id.  We consider the totality of the circumstances in determining whether a suspect's waiver is valid.  Id.

United States v. Gayekpar, 678 F.3d 629, 638 (8th Cir.), cert. denied, 133 S.Ct. 375 (2012).  Accord United States v. Vinton, 631 F.3d 476, 483 (8th Cir.), cert. denied, 565 U.S. 866 (2011).

Looking at the two dimensions to the inquiry whether defendant Teagues' waiver of his Miranda rights was voluntary, knowing, and intelligent, the Court notes first that no evidence was presented to suggest that Detective Schwalm intimidated, coerced, or deceived defendant Teagues prior to or during the interview.  Rather, Detective Schwalm testified that he did not make any

6

Case 4:16-cr-00012-BP   Document 44   Filed 02/16/17   Page 6 of 8

threats against defendant Teagues to get Teagues to speak with him and that he did not physically intimidate Teagues nor coerce Teagues in any way. (Fact No. 9) Second, the Court finds that defendant Teagues waived his rights with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Detective Schwalm read the Miranda waiver form to defendant Teagues and Teagues told Detective Schwalm that he understood his rights and signed the waiver form. (Fact No. 2) While defendant asserts in his motion that he was intoxicated and recently tased by police and, thus, unable to knowingly and voluntarily waive his right to remain silent, the evidence presented at the hearing suggests that defendant was able to knowingly and voluntarily waive his rights. The tasing had taken place three hours prior to the interview. (Fact No. 1) After the tasing, defendant Teagues was taken to a hospital, evaluated and released to police custody. (Id. at n. 2) Detective Schwalm testified that defendant Teagues spoke in a calm and soft manner, that Teagues was responsive to Schwalm's questions and that Schwalm had no trouble communicating with Teagues. (Fact No. 4) Detective Schwalm testified that he has experience interacting with people who are on drugs. (Fact No. 6) Detective Schwalm testified that during his interview with defendant Teagues, Teagues exhibited no indicators of being under the influence of anything. (Fact No. 7) Detective Schwalm testified that it did not appear that pain was affecting Teagues' responses to Schwalm's questions. (Id.) Defendant Teagues told Detective Schwalm that he had not been drinking and that he was on no drugs. (Id.) Finally, evidence was presented that affirmatively shows that defendant Teagues' will was not overborne during the interview. Teagues exhibited the ability to refrain from answering those questions that he preferred not to answer, such as the reason he had been naked and masturbating on the bus, where Teagues' response was that there was not anything worth talking about concerning that part of his arrest. (Fact No. 5) After

7

considering the totality of the circumstances, the Court concludes that defendant Teagues' Miranda waiver was voluntary, knowing, and intelligent.

IV. CONCLUSION

Given the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Teagues' Motion to Suppress Statements (doc #36).

Counsel are reminded they have fourteen days after being served a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

          /s/ *Sarah W. Hays*
          SARAH W. HAYS
          UNITED STATES MAGISTRATE JUDGE